Paul D. Stevens (Cal. Bar. No. 207107)
pstevens@stevenslc.com
Robert J. Pribish (Cal. Bar. No. 244642)
rpribish@stevenslc.com
Lauren A. Bochurberg (Cal. Bar. No. 333629)
lbochurberg@stevenslc.com
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Tel: (213) 270-1211
Fax: (213) 270-1223

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| JENNIFER ENDRES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEWELL BRANDS INC. a Delaware Corporation doing business in California; THE YANKEE CANDLE COMPANY, INC. a Delaware Corporation doing business in California; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00952-MWF-DFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date:  April 8, 2024<br>Time:  10:00 am<br>Dept:  Courtroom 5A<br>Judge:  Judge Michael W. Fitzgerald |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  STANDARD OF REVIEW .................................................................3

III. ARGUMENT ......................................................................................3

  I.   Plaintiff Sufficiently States Claims Under the UCL and the CLRA ................3

   A.  Plaintiff Properly Pled a Misrepresentation Claim ...........................................3

    1. Plaintiff's Misrepresentation Claim is Pled with Particularity. ..........................3

    2. Plaintiff Alleges Actionable Misrepresentations ................................................7

   B.  Plaintiff Properly Pled Omission Claims........................................................12

    1. Plaintiff's Omission-Based Claims Provide The Specificity Required By Rule 9(b)................................................................................................................12

    2. Plaintiff's Omission Allegations are Actionable. ...............................................15

  II.  Plaintiff States Adequate Claims for Equitable Relief ...................................19

   A.  Plaintiff Establishes Standing to Seek Injunctive Relief ..............….................19

   B.  Plaintiff May Plead Equitable Relief............................................. .................22

IV.  CONCLUSION .....................................................................................23

i

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Apple Inc.*, 500 F. Supp. 3d 993 (N.D. Cal. 2020) ......................16, 17, 18

*Ary v. Target Corp., 2023 U.S. Dist. LEXIS 49633, at \*9 (N.D. Cal. Mar. 23, 2023).*20

*Ass'n for L.A. Deputy Sheriffs v. Cty. Of L.A.*, 648 F.3d 986 (9th Cir. 2011) ...............3

*Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753 (9th Cir. 2015) .............................22

*Banh v. Am. Honda Motor Co.*,
2019 U.S. Dist. LEXIS 230700 (C.D.  Cal. December 17, 2019)...............................13

*Bronson v. Johnson & Johnson, Inc.,*
2013 U.S. Dist. LEXIS 151842 (N.D. Cal. Oct. 21, 2013) ...................................... 4, 6

*Brown v. Madison Reed, Inc.*, 2021 U.S. Dist. LEXIS 164002 (N.D. Cal. 2022) ......5,7

*Bruton v. Gerber Prods. Co., WL* 2014 WL 17211 (N.D. Cal. Oct. 2, 2013)..........6, 14

*Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016)......................7

*Daugherty v. American Honda Motor Company, Inc.*, 144 Cal.App.4th 824 (2006) ...18

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ..............................19

*Dawood v. Gamer Advantage LLC*,
2022 U.S. Dist. LEXIS 138774 (E.D. Cal. August 4, 2022)...................... 6, 10, 15, 18

*Doe v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. Sept. 30).......................................... 6, 9, 12, 13, 14, 18

*Ehret v. Uber Technologies*, 68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...........................6

*Eisen v. Porsche Cars N. Am., Inc.,* 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ......13

*Hamman v. Cava Grp., Inc.*,
2023 U.S. Dist. LEXIS 85634 (S.D. Cal 2023)................................................15, 17, 19

*Hernandez v. Radio Sys. Corp.*, 2023 U.S. Dist. LEXIS 40038 (March 9, 2023) .........7

*Hodson v. Mars, Inc.* 891 F.3d 857 (9th Cir. 2018) .........................................15, 16, 18

*In re ConAgra Foods, Inc.,* 908 F. Supp. 2d 1090 (C.D. Cal. 2012) .............................4

*In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217 (N.D. Cal. 1994).........................4

*Junhan Jeong v. Nexo Financial LLC, et. al*.,

2022 WL 174236 (N.D. Cal. Jan. 19, 2022)....................................................................21

*Kanan v. Thinx Inc.,*

2021 U.S. Dist. LEXIS 191225 (C.D. Cal. June 23, 2021) .............................3, 5, 7, 22

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (Cal. 2002) ..........................................................9

*Lewis v. Rodan & Fields, LLC*, 2019 U.S. Dist. LEXIS 32470 (N.D. Cal. 2019)  16, 18

*Linton v. Axcess Fin. Servs.*, 2023 U.S. Dist. LEXIS 113669 (June 30, 2023)............21

*Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) ...............................................................3

*Marshall v. Red Lobster Mgmt.* LLC, 2023 U.S. Dist. LEXIS 231871 (C.D. Cal. December 18, 2023)....................................................................................................8, 11

*Mui Ho v. Toyota Motor Corp.*, 931 F.Supp.2d 987 ......................................................18

*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008) ..............................8

*Santillan v. Am. Honda Motor Co., Inc.,*

2023 U.S. Dist. LEXIS 180205 (C.D. Cal. June 22, 2023) ...........................................13

*Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. October 17, 2022) ........21

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ..........................20, 21

*Sparkman v. Comerica Bank*, 2023 U.S. Dist. LEXIS 136485 (August 4, 2023)........21

*Tabler v. Panera LLC*, No., 2020 WL 3544988 (N.D. Cal. Jun. 30, 2020) ...................4

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003)......................................3

*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................8

*Watson v. Solid Gold Pet, LLC,*

2019 U.S. Dist. LEXIS 128123 (C.D. Cal. February 22, 2019).......................................8

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ...................................7, 9

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ...................................16

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.,*

2022 U.S. Dist. LEXIS 51006 (N.D. Cal. March 22, 2022)...........................................21

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018)........................8, 10, 20

1

**Statutes**

2

Federal Rule of Civil Procedure 9(b)........................................................3, 6, 12, 13, 15

3

Federal Rule of Civil Procedure 12(b)(6).........................................................................3

4

5

Federal Rule of Civil Procedure 15 .................................................................................3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  __INTRODUCTION__

This important consumer protection matter concerns two issues: 1) the omission and non-disclosure of information that is a material concern for consumers—namely, the existence of, and potential health risks from, certain chemicals in candle products produced and sold by Defendants; and 2) false and misleading marketing of the Products given the omission of the existence of, and potential health risks from, certain chemicals in the Products. First Amended Complaint ("FAC") ¶4.   As set forth in the FAC:

- The Products contain per- and polyfluoroalkyl substances, a class of chemicals known as "PFAS", as measured in organic fluorine. FAC ¶19.
- PFAS are known as "forever chemicals" because they are highly toxic and extremely resistant to degradation in the natural environment and human bodies. FAC ¶22.
- The U.S. Centers for Disease Control and Prevention outlines several health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, increased risk of asthma and thyroid disease. FAC ¶20.
- The California legislature has declared that "PFAS have been linked by scientific, peer-reviewed research to severe health problems." FAC ¶24.
- PFAS chemicals accumulate in the human body. There is no safe manner or level of exposure to humans. FAC ¶27.
- Under the California Health & Safety Code, PFAS means a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom and is measured in total organic fluorine. FAC ¶28.
- Plaintiff commissioned testing of the Products (as defined in the FAC) in accord with accepted industry standards that confirmed the existence of fully fluorinated carbon atoms and organic fluorine in the Products at dangerous levels. FAC ¶¶30,31.

The FAC further details the significant public health concern about PFAS used in candles, including but not limited to:

- Burning candles containing PFAS contribute to environmental contamination. FAC ¶18.
- Since PFAS exposure can occur through inhalation of PFAS-contaminated air, candle products containing PFAS present significant build-up health risk over time as people and animals are repeatedly exposed to them. FAC ¶18.

The existence of organic fluorine and PFAS in the Products thus implicates health and safety concerns and risks to consumers and the environment. FAC ¶32. However, as Plaintiff pled, the marketing and packaging of the Products omit and do not provide any disclosure of the existence of, and potential health risks from, organic fluorine and PFAS in the Products. (FAC ¶33,34).

Further, Defendants extensively promote the Chesapeake Candle brand and products as "wellness" products and the Yankee Candle brand and products as "sustainable". FAC ¶7. "Wellness" marketing focuses on good health, healing and wellness to attract consumers and enhance a brand's reputation. FAC ¶9. "Sustainable" marketing is the promotion of environmentally and socially responsible products, practices, and brand values. FAC ¶11. The FAC sets forth the specific marketing that contributed to promoting the Chesapeake Candle brand and products as "wellness" products and the Yankee Candle brand and products as "sustainable" in over twelve pages of the complaint. FAC ¶¶14, 16.

Given the existence of organic fluorine and PFAS in the Products, Defendants' marketing of the brands and Products is false and misleading.

Prior to filing this lawsuit, Plaintiff served Defendants with pre-lawsuit notice stating Plaintiff's concerns and requesting Defendants address these issues. Defendants' response – they ignored it. Now, Defendants bring a Motion to Dismiss this important consumer protection matter based on the following:

1. Plaintiff's claims fail to comply with Federal Rule of Civil Procedure 9(b)'s fraud pleading standard and do not adequately plead an actionable misrepresentation or omission. (Motion to Dismiss ("MTD"), p.1:9-12);

2. Plaintiff does not have standing to seek injunctive relief and she fails to establish her available legal remedy is inadequate. (MTD p.1:13-15); and

3. Plaintiff's claim for unjust enrichment fails because it is not a standalone cause of action. (MTD p.1:16-19).

As demonstrated herein, Defendants' assertions are incorrect and their motion should be denied.

## II.   STANDARD OF REVIEW

As the Court is aware, on a Rule 12(b)(6) motion, all allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. Cty. Of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011).  If the Court finds a claim is deficient, leave to amend shall be freely given bearing in mind "the underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities" "unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.   ARGUMENT

**I.   Plaintiff Sufficiently States Claims Under the UCL and the CLRA**

**A. Plaintiff Properly Pled a Misrepresentation Claim**

**1.  Plaintiff's Misrepresentation Claim is Pled with Particularity.**

Under Rule 9(b), a fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003).  However, Rule 9(b) demands only a level of detail sufficient to place a defendant on notice of the basis for a plaintiff's claims and to demonstrate that a plaintiff is not on a "fishing expedition." *Kanan v. Thinx Inc.,*

2021 U.S. Dist. LEXIS 191225, *14 (C.D. Cal. June 23, 2021). Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge prior to discovery. *Id.*; *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994).

Here, Defendants challenge the "when" and the "what" of Plaintiff's misrepresentation-based claims. With regard to the "when", Defendants argue Plaintiff does not sufficiently allege when she viewed or relied on the various website submissions she identified in the FAC (MTD p.4:17-20); when the screenshots included in the FAC were taken, nor that these same materials were present on the respective websites at the time of her purchase. (MTD p.4:5-5:1). Defendants then contend that "[w]ithout knowing if the advertising content ***she claims to have seen was provided during the period she claims to have seen it***, there is no way to ascertain whether Plaintiff's claims are even possible, let alone plausible." (MTD p.5:10-13)(emphasis added). Defendants' arguments are incorrect for several reasons.

First, the FAC need not allege the <u>specific</u> date which Plaintiff visited the websites or purchased a Product because the Ninth Circuit has not established such a requirement. See *Bronson v. Johnson & Johnson, Inc.,* 2013 U.S. Dist. LEXIS 151842, at *19-21 (N.D. Cal. Oct. 21, 2013)(Defendants contend that Plaintiffs fail to allege "which pages of the website" were reviewed, "when" they were viewed, and what Bronson "interpreted those claims to mean." … But Kearns did not require such specific allegations.); *In re ConAgra Foods, Inc.,* 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012)("[did] not believe that requiring that plaintiffs allege specific dates on which they saw the representations [was] necessary or realistic.").

Second, the cases Defendants relied upon do not apply as each concerned circumstances where some of the challenged marketing occurred outside the alleged class period. See *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL

3544988, at *7 (N.D. Cal. Jun. 30, 2020); *Brown v. Madison Reed, Inc.*, 2021 U.S. Dist. LEXIS 164002, *30 (N.D. Cal. 2022). Moreover, in *Brown*, the court noted "[w]hether or not specific dates are required, they have not even provided a rough approximation here." *Id.* The circumstances here are different.

The FAC explicitly states the "when" -  Defendants made the misrepresentations and omissions during the putative class period, including at the time Plaintiff purchased the Products, and the marketing was the same throughout the proposed class period continuing to this day. FAC ¶¶45(b),(c),82,95,114.  The FAC alleges:

- The class period is the "time period of four (4) years preceding the date of the filing of this class action." FAC ¶58 (case originally filed December 29, 2023, thus December 29, 2019 to present)(Docket 1, Ex #2).
- The challenged marketing was during the proposed class period – "Defendants' marketing and representations about each of the respective Product brands and Products to which Plaintiff and the Sub-Classes were exposed were the same and therefore common to Plaintiff and the Sub-Class Members." FAC ¶¶64b,102b.
- "Plaintiff read, believed, and relied upon Defendants' marketing and advertising *when* purchasing the Products", within the proposed class period. FAC ¶43 (emphasis added); FAC ¶¶82,95,114.
- Plaintiff provides a narrow date range within the alleged time period of the marketing and alleged misrepresentations – "Plaintiff purchased the Products from a Target store within the past seven (7) months of the filing of the Complaint." FAC ¶¶58,59.
- Finally, Plaintiff alleges the conduct continues. FAC ¶¶82,95,114.

In sum, the allegations in the FAC make clear the "when" (i.e., when the misrepresentations were made and when Plaintiff viewed them) was within the only time period that is material – the proposed class period. In *Kanan,* the Court found

similar allegations sufficient to meet Rule 9(b) requirements. See *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. Sept. 30, 2014) citing *Bruton v. Gerber Prods. Co., WL* 2014 WL 17211, at \*13 (N.D. Cal. Oct. 2, 2013)(allegations that plaintiff purchased defendant's products throughout the class period were "sufficient to place [defendant] on notice as to the time period in which [plaintiff's] allegations arise"); see also *Dawood v. Gamer Advantage LLC*, 2022 U.S. Dist. LEXIS 138774, \*9-11 (E.D. Cal. August 4, 2022)(Plaintiff bought defendant's FogAway product in the summer of 2021).

Lastly, Defendants' argument acknowledges Plaintiff claims to have seen the advertising content during a specific period but challenges whether the advertising content was provided when Plaintiff *claims* to have seen it. (MTD p.5:10-13). Defendants' argument is an inappropriate challenge to the merits and the facts are within Defendants' knowledge and subject to discovery.

With regard to the "what", Defendants argue Plaintiff simply includes screenshots from unrelated website pages and fails to identify which statements in those materials she actually viewed and specifically relied on. (MTD ⁋14-16.) Defendants are incorrect.

First, it is well established that Plaintiff is not required to allege the precise web pages viewed and the precise date she viewed them. *Ehret v. Uber Technologies*, 68 F. Supp. 3d 1121, 1129  (N.D. Cal. 2014). See also *Bronson,* 2013 U.S. Dist. LEXIS 151842, at \*20-21. ("it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they have been saw (sic) were the particular advertisements they relied upon."; It suffices for plaintiffs to provide examples of advertisements similar to those they saw as long as all the advertisements convey the core allegedly fraudulent message).

Second, Plaintiff in fact alleges that she saw and relied on specific representations on Defendants' website pages and product labels and she reproduced the websites' pages and specifies the language from each of the website pages with

bullet points in the FAC. FAC ¶¶14(a-f),16(a-h),43,59,78,92,110.  Plaintiff alleged that these representations span the entire class period. FAC ¶¶45(b), 58, 64, 82, 95, 102(b), 114.   In *Kanan, supra,* the Court found similar allegations specific enough to put defendant on notice of the advertisements and representations at issue upon which plaintiffs allege to have relied. *Kanan*, 2021 U.S. Dist. LEXIS 191225, *10-11 ("Plaintiffs allege that they saw and relied on representations on Thinx's website, advertising, product labels, and packaging; Plaintiffs also reproduced portions of the website and product labels; Plaintiffs have alleged that these representations date back to at least 2019, with some representations spanning the Product's lifetime.")(internal citations omitted).  Plaintiff has done that here. FAC ¶¶43,59,78,92,110.

### 2.  Plaintiff Alleges Actionable Misrepresentations

Defendants make three arguments contending Plaintiff does not allege an actionable misrepresentation.

First, Defendants argue that that "*many*" of the representations that Plaintiff alleges she saw and purportedly relied upon were mere puffery. (MTD p.6:25-27.) Defendants do not claim <u>all</u> of the challenged marketing is puffery but instead only cite to the following five (5) marketing claims: "High quality . . . fragrances"; "[F]ragrance-filled journey into wellness"; "We take great pride in . . . using only the finest quality ingredients and materials"; "Premium candles"; and, "Only the best ingredients go into creating our distinctive true to life scents." (MTD p.6:29-p.7:4.) As demonstrated below, these statements are actionable.

"Deception may be found based on the net impression created by a representation", not just isolated statements. *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1184 (9th Cir. 2016). "In isolation, [statements] could be puffery, but if combined with others, might constitute misrepresentations." *Brown,* 622 F. Supp. 3d at 804.   Context is critical when evaluating whether a specific representation is puffery. *Hernandez v. Radio Sys. Corp*., 2023 U.S. Dist. LEXIS 40038, *12 (March 9, 2023). Words, pictures and designs can add to the deceptiveness. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).   However, even if analyzed in

isolation, a statement is only considered puffery if the claim is extremely unlikely to induce consumer reliance. *Newcal Indus., Inc. v. Ikon Off. Sol*., 513 F.3d 1038, 1054 (9th Cir. 2008).

Here, the marketing is not puffery.  For example, with regard to the term "premium", Defendants rely on *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013), which found that the word "premium" on a beverage company's soda package was "mere puffery." *Id.* at 894. However, *Watson v. Solid Gold Pet, LLC*, 2019 U.S. Dist. LEXIS 128123, *7 (C.D. Cal. February 22, 2019), distinguished *Viggiano*, noting the court "further explained that the defendant's use of 'premium' was 'general and lack[ed] any context indicating the scope of what [was] being warranted; the label [did not even] say the beverage contain[ed] "premium flavors" or "premium ingredients."'" *Id.* at 895. *Watson* explained that "[h]ere, the word 'premium' has been used to describe 'nutrition,' which provides the specificity needed to determine what is being warranted." *Id.*   The marketing at issue here meets this standard.  The word "premium" is used to describe both the "candle" and the grade of "paraffins" used in the candle. FAC ¶16 (b)(i).

Similarly, the representations "High quality . . . fragrances"; "using only the finest quality ingredients and materials"; and, "Only the best ingredients go into creating our distinctive true to life scents" are also actionable misrepresentations, not puffery.[1] See *Watson, supra*, at *2, 6 (consideration of "high quality"; "Defendant asserts that the Quality Claims at issue are 'merely statements about the Products that highlight general positive attributes,' and therefore not legally actionable.  The Court is not persuaded"); *Marshall v. Red Lobster Mgmt.* LLC, 2023 U.S. Dist. LEXIS 231871 (C.D. Cal. December 18, 2023)(representation that Products are "sourced to the highest standards" is a fact that is clear, capable of verification and capable of inducing consumer reliance); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D.

---

[1] Court decisions issued more recently than the case relied upon by defendant, *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. November 10, 2005), have found similar claims actionable non-puffery.

Cal. 2018) (claim that product suppliers "adhere to the highest standards" is not puffery).

Similarly, the "[F]ragrance-filled journey into wellness" representation is actionable.  See *Renn v. Otay Lakes Brewery*, LLC, 2024 U.S. Dist. LEXIS 15523, *8-11 (S.D. Cal. January 29, 2024)("health and wellness" claims not puffery; District courts have held that labels on food or drink products that suggest they are "healthy", "balanced" or "good for you" raise an issue of fact whether reasonable consumers would be misled by such statements). Each of the misrepresentations Defendants contend are "puffery" meet this standard in their context.

Finally and moreover, authority relied upon by Defendant explains that even puffery may "contribute[]. . . to the deceptive context . . . as a whole.  See *Doe*, 70 F. Supp. 3d at 1080 citing *Williams*, 552 F.3d at 939 n.3 . In *Doe*, the Court "decline[d] to discount the effect even "mere puffery" might have had in light of Defendant's failure to disclose. *Doe,* 70 F. Supp. 3d at 1080.

Defendants' second argument is that "[t]o the extent that *any* of the statements included in the materials cited by Plaintiff can be objectively measured, Plaintiff does not allege that they are untrue or would be likely to deceive a reasonable consumer." (MTD p.7:12-14)(emphasis).[2]  Defendants' arguments are incorrect and inappropriate.

First, "the UCL and CLRA prohibit not only advertising "which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id. citing Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (Cal. 2002).   Here the FAC alleges that all of the statements contribute to the "false, misleading and deceptive" promotion of the Chesapeake Candles as a high-quality wellness brand and products and the Yankee Candle brand as a premium and sustainable brand and products in light of the failure to disclose the existence of organic fluorine and PFAS in the products.  FAC

---

[2] Defendants do not identify all of the challenged marketing but instead cites to the following "examples": "Infused with pure essential oils"; "Made in the USA with materials from around the world"; "Soy wax blend"; "Our wicks are made with 100% natural fibers." (MTD p.7:14-17.)

¶¶14,16,39,73,75,90,103,104.  The FAC also alleges that Plaintiff was deceived. FAC ¶¶43,44,77,91,92,106,110.

Second, to the extent Defendants challenge whether the representations are misleading, how consumers would interpret these representations is a question of fact and not a question that the court can resolve at this stage. *See Dawood v. Gamer Advantage LLC*, 2022 U.S. Dist. LEXIS 138774 *4 (E.D. Cal., August 4, 2022); *Zeiger,* 304 F. Supp. 3d at 852.

Finally, Defendants' third argument concerning the "sustainability" and "wellness" claims are not supported by any legal authority whatsoever.

The first unsupported argument is that "statements made regarding the sustainability efforts of Defendants… have no connection to the alleged presence of organic fluorine in the Products." (MTD p.7:21-24.)  This is incorrect. The FAC alleges the purpose of the sustainability marketing and the connection to organic fluorine. The FAC alleges that, among other things, "sustainable marketing is the promotion of environmentally and socially responsible products, practices, and brand values" and "[s]ustainable marketing focuses on integrating environmental considerations into aspects of a brand's identity and actions" (FAC ¶11) and that "[i]ncorporating social responsibility into wellness brands' public relations strategies can make a profound impact on consumer decisions and [c]onsumers today are increasingly conscious of brands' efforts to make a positive difference in the world." FAC ¶12.  The FAC then explains PFAS and organic fluorine cannot be "sustainable" because "they are extremely resistant to degradation in the natural environment, including the water, the soil, the air, and our bodies" and contaminate drinking water, breast milk and indoor and outdoor air. FAC ¶¶22,26. The FAC further alleges "[b]urning candles containing … 'PFAS' contribute to environmental contamination." FAC ¶18(c). Finally, the FAC alleges that under the Californian Health & Safety Code, the presence of PFAS in a product is indicated by and measured in total organic fluorine and the presence of one fully fluorinated carbon atom and that testing

commissioned by Plaintiff confirmed the existence of fully fluorinated carbon atoms and organic fluorine in the products. FAC ¶¶28,30.  This sufficiently spells out the connection between Defendants' sustainability marketing and the presence of organic fluorine.

Next, Defendants argue that "nowhere does Plaintiff seek to allege or identify any expectations or damages related to Defendants' sustainability efforts" and "does not … attempt to explain how statements concerning Defendants' sustainability efforts are misleading because of the alleged presence of organic fluorine in the Products." (MTD p.7:23-27).  This is incorrect.

The FAC alleges "[t]he existence of organic fluorine in the Products directly contradicts Defendants' representations that the Chesapeake Candle brand sells high-quality wellness products and the Yankee Candle brand sells premium sustainable products."  FAC ¶39.  The FAC alleges that "[p]rior to purchase, Plaintiff and consumers lack the expertise to ascertain the existence of the true materials, chemicals and/or ingredients in the Products, including but not limited to organic fluorine and PFAS and their risks to human health."  FAC ¶40. The FAC further alleges "Defendants have exclusive knowledge of the materials, ingredients and chemicals in the Products" and that "Plaintiff and reasonable consumers must, and do, rely on Defendants to disclose the materials, chemicals, and ingredients in the Products and advise of the risks that may potentially affect the health and/or safety of consumers." FAC ¶¶41,42; "Plaintiff read, believed, and relied upon Defendants' marketing and advertising when purchasing the Products" and that "in reliance on Defendants' labeling, marketing claims and omissions…, Plaintiff and consumers purchased Products they would not have purchased but for Defendants' false promotion of the products as high-quality wellness products and premium sustainable products." FAC ¶¶42,44.  These allegations are sufficient to state a claim. See *Marshall,* 2023 U.S. Dist. LEXIS 231871, at *27-28.

Next, Defendants argue that none of the statements address health-related topics other than general themes of wellness, which is purportedly nonactionable puffery.

(MTD p.8:1-3.)   This incorrect.  As noted, the marketing materials include the statement "Fragrance-filled journey into wellness for the mind & body" as well as other statements and images contributing to the impression that the product is healthy and serves wellness. FAC ¶14(a).  Moreover, even if Defendants are correct and the "wellness" statements are puffery, even puffery may contribute to the deceptive context as a whole.  See *Doe,* 70 F. Supp. 3d at 1080.

Lastly, Defendants argue that "Plaintiff does not—and cannot—explain why such statements are misleading in light of the alleged presence of organic fluorine in the Products." (MTD p.8:3-5.) As set forth above, the FAC does explain the "why" (Products containing organic fluorine and PFAS are not healthy or sustainable) and whether the noted misrepresentations are misleading is a question of fact not amenable to resolution at the pleading stage.

**B.     Plaintiff Properly Pled Omission Claims**

Defendants challenge Plaintiff's UCL and CLRA claims based on omissions arguing: (1) they are not pled with the particularity required by Rule 9(b); and (2) they do not allege an actionable omission.  Defendants are incorrect.

**1.    Plaintiff's Omission-Based Claims Provide The Specificity Required By Rule 9(b).**

Defendants contend Plaintiff fails to provide the specificity required by Rule 9(b), arguing "Plaintiff alleges only that she purchased … [the products] from a Target store within the past seven (7) months . . . ." and then, relying on *Doe,* 70 F. Supp. 3d at 1081–82, Defendants assert that such allegations fail to provide the "who, what, when, where, and how" of the alleged fraud by failing to allege important details such as: when she first saw the representation at issue; when she first learned of the alleged omission; whether she has ceased purchasing the Products; when she might purchase the Products in the future; and, when specifically she purchased the Products at issue. (MTD p. 8: 14-27).  Defendants claim that without such information, they cannot meaningfully respond to Plaintiff's claims. (MTD p. 8:27-9:1).  Defendants misstate what is pled and what is required.

First, Defendants' reliance on *Doe* is misplaced as *Doe* considered the particularity with which Plaintiffs' there pled economic injury and reliance regarding misrepresentations, not the particularity required for an omission nondisclosure claim. *Doe*, 70 F. Supp. 3d at 1081.  Second, in *Doe*, the court held that "nowhere in the FAC do Plaintiffs allege when they saw the specified representations, when they purchased Defendant's services, or when they discovered Defendant's allegedly fraudulent conduct. *Id*. That is not the case here.

While Rule 9(b) provides heightened pleading requirements that apply to UCL and CLRA claims sounding in fraud and a plaintiff must allege the who, what, when, where, and how of the misconduct charged, the Rule 9(b) standard is "somewhat relaxed" when a claim rests on an allegation of fraudulent omission or concealment because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F.Supp.3d. 1306, 1325-26 (C.D. Cal. 2013).  One line of cases provides that "[t]o plead the circumstances of omission with specificity plaintiff 'must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.'" See *Santillan v. Am. Honda Motor Co., Inc.,* 2023 U.S. Dist. LEXIS 180205, *3-4 (C.D. Cal. June 22, 2023). *citing Eisen v. Porsche Cars N. Am., Inc.,* 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012). Others have rejected this standard and applied the "who, what, when, where, and how". See *Banh v. Am. Honda Motor Co*., 2019 U.S. Dist. LEXIS 230700, *1 (C.D.  Cal. December 17, 2019)(finding pleading standard applied in *Eisen* has been widely rejected). Plaintiff has met both standards here.

First, Plaintiff pled the content of the omission, provided representative samples of marketing and packaging that she relied on to make her purchases and that failed to

include the omitted information, where the omission could and should have been revealed, and what content should be provided. FAC ¶14,16,34,35,36.

Second, Plaintiff has sufficiently pled "the who, what, when, where, and how of the misconduct charged.":  The FAC alleges "Plaintiff purchased the Products from a Target store within the past seven (7) months of the filing of the Complaint." FAC ¶¶58, 59. See *Doe*, 70 F. Supp. 3d at 1082 citing *Bruton, WL* 2014 WL 17211, at *13 (allegations that plaintiff purchased defendant's products throughout the class period were "sufficient to place [defendant] on notice as to the time period in which [plaintiff's] allegations arise").  The FAC alleges the representations, or lack thereof, that plaintiff saw on the advertisements and labeling and relied upon when purchasing the products, which was within the proposed class period. FAC ¶¶14,16,43,82,95,114. The FAC pleads why and how Defendants' representations about the Products are false and misleading by alleging the findings from the testing done on the Products and other studies about organic fluorine and PFAS generally. FAC ¶¶18, 19,20,22,24,27,28,30,31. The FAC alleges that Defendants omitted the information about PFAS to induce consumers to purchase the Products. FAC ¶45(f).  The FAC also alleges that Plaintiff would have acted differently if she knew about the existence of organic fluorine and PFAS in the Products. FAC ¶¶43,44,45(g),59,78,92,110.  In addition, Plaintiff alleges: that Plaintiff first learned of the omission between the time she purchased the products (June 2023) and the filing of the complaint seven months later.  FAC ¶¶40,44,58,59. The FAC makes clear she is not purchasing at this time. FAC ¶¶43,44,45(g),59,78,92,110.  Plaintiff pled *she might purchase the Products again in the future* if the false marketing and omissions were corrected through the appropriate disclosures of information and/or if the composition of the Products is changed so as to make the current representations true. FAC ¶60 (emphasis added). Lastly, the FAC literally summarizes in detail the who, what, when, where, and how of the misconduct charged at FAC ¶45(a-g).

In *Dawood v. Gamer Advantage LLC*, 2022 U.S. Dist. LEXIS 138774, *9-11 (E.D. Cal. August 4, 2022), the Court found similar allegations met the  Rule

9(b) standard: "Plaintiff bought defendant's FogAway product in the summer of 2021. The complaint alleges the representations, or lack thereof, that plaintiff saw on the advertisements and labeling of FogAway. [] Further, the complaint sufficiently pleads why and how defendant's representations about FogAway are false by alleging the findings from the study done on FogAway and other studies about PFAS generally. [] The complaint alleges that defendant omitted or mispresented the information about PFAS so that consumers would purchase FogAway. [] The complaint also alleges that plaintiff relied on the representations, or lack thereof, and would have acted differently if he knew about the existence of PFAS in FogAway." *Id.* *9-11. (internal citations omitted). See also  *Hamman v. Cava Grp., Inc.*, 2023 U.S. Dist. LEXIS 85634, *17, (S.D. Cal 2023), where the court found similar allegations met the Rule 9(b) standard.

Plaintiff's allegations regarding her omission-based claims meet the particularity standard of  Rule 9(b).

### 2.  Plaintiff's Omission Allegations are Actionable.

Defendants' analysis of whether the omission-based claims are actionable is based on incomplete legal authority and incorrect conclusions.

Omission may be the basis of claims under California consumer protections laws based on two (2) circumstances: 1) where an omission is contrary to a representation actually made by the defendant; or 2) or an omission of a fact the defendant was obliged to disclose." *Hodson v. Mars, Inc*. 891 F.3d 857, 861 (9th Cir. 2018). Both apply here.

As to the first, Plaintiff has alleged that Defendants made misrepresentations about the brands and Products that are contrary to the alleged omission.  FAC ¶¶33, 39, 41, 45(a)(b)(e).  The gravamen of the misrepresentations addressed in the FAC is that the Products are good for consumers' well-being and the environment. Defendants promoted that image for these Products through their wellness and sustainability marketing.  The omissions of the presence of organic fluorine and PFAS in the Products and, therefore, the health risks and environmental detriment these

Products pose is contrary to Defendants' representations that the Products promote well-being and sustainability.  This establishes an actionable omission here.

The second basis for an actionable omission is by showing the omission was of a fact that Defendants were obliged to disclose.  *Hodson, supra,* at 861. Defendants assert that a duty to disclose is  only actionable in one of four discrete circumstances": (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. (MTD p.9:8-15).

Defendants are correct that fulfilling any of these four criteria establishes the obligation to disclose, but they omit another circumstance that is actionable - when the undisclosed information "cause[s] an unreasonable safety hazard".  *Hodson*, 891 F.3d at 861 (citing *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136 (9th Cir. 2012)). Defendant also asserts that Plaintiff only asserts one possible circumstance, "exclusive knowledge" (MTD p.9:16-20).  This is also incorrect.  As set below, Plaintiff asserts three (3) of the five (5) circumstances establishing a duty to disclose apply here.

First, Plaintiff alleges that Defendants had exclusive knowledge of material facts not known or reasonably accessible to the plaintiff.  To establish exclusive knowledge, the defendant need not have been the sole holder of the knowledge. See *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014-1015 (N.D. Cal. 2020).   It is generally sufficient for defendants to have had "superior knowledge" and for the information to have not been reasonably discoverable by the plaintiffs. *Id.*  Further, allegations "'that defendants were aware of or had reason to know of' the allegedly omitted information" is sufficient for pleading knowledge for UCL and CLRA claims. See *Lewis v. Rodan & Fields, LLC*, 2019 U.S. Dist. LEXIS 32470, *9-10 (N.D. Cal. 2019) .

Here, Plaintiff alleged that she did not know the Products contained PFAS before purchasing them. FAC ¶¶40, 44.  She alleged that nowhere in the marketing or

packaging was there any disclosure that would indicate the Products contained organic fluorine and PFAS.  FAC ¶¶33, 34. Plaintiff alleges that she only gained knowledge of the presence of organic fluorine and PFAs after purchasing the Products and  having the Products tested by an independent third-party laboratory.  FAC ¶¶40, 44, 58, 59. Plaintiff alleges that Defendants, as the manufacturers of the Products, had exclusive knowledge of the materials, ingredients and chemicals in the Products.  FAC ¶¶5,38-42.

Defendants argue that they did not have exclusive knowledge because, for example, Plaintiff's allegations about public concerns regarding chemicals in candles establish a lack of exclusive knowledge and that due to that general public concern a reasonable consumer would assume candles contain potentially-harmful chemicals . (MTD p.10:17-25).  Defendants' arguments are incorrect.

General knowledge about chemicals in candles does not establish specific knowledge that Defendants' candles contain organic fluorine and PFAS. Instead, to demonstrate lack of exclusive knowledge, Defendants would need to establish that there was some information out there that the Products contain organ fluorine or PFAS and that it was reasonably accessible to Plaintiff.  Such was the case in *Hamman,* where the Court found no duty to disclose under the "exclusive knowledge" factor because Plaintiffs referred to studies conducted by a third party which revealed Defendant's packaging contained PFAS and that additionally, Plaintiffs' referenced an archive from Defendant's website wherein Defendant acknowledged that its Products' packaging contains PFAS. *Hamman,* 2023 U.S. Dist. LEXIS 85634, *23.  There are no equivalent circumstances here.  Nowhere was there discoverable information that there is organic fluorine or PFAS in the Products.

Further even if information about PFAS in the Products had been available to the public (which it was not), that does not negate a claim for fraudulent omission because consumers are not required to conduct such a search. See *Anderson,* 500 F. Supp. 3d at 1014-1015.  Moreover, any information that candle products may generally contain harmful chemicals would be negated by Defendants' marketing their

brands and products as good for well-being and sustainability.  That indeed is the fraud.

Second, Plaintiff alleges an actionable omission based on partial representations that are misleading because some other material fact has not been disclosed. Partial representations can lead to a duty to disclose when "Plaintiffs allege that Defendant made partial representations that were misleading due to other facts not disclosed, and identify specific representations and omissions." *Doe,* 70 F.Supp.3d at 1079-80; *Anderson,* 500 F. Supp.3d at 1013. "The entire theory of a case based on partial omissions is that what is disclosed is in some sense true but that the whole truth is missing." *Id.* A contradiction between the statements and the alleged omissions is an actionable omission. *Id.*

As alleged in the FAC, Defendants' representations and images that the Chesapeake Candle brand sells high-quality wellness products and the Yankee Candle brand sells premium sustainable products are misleading in light of the omission of the presence of organic fluorine and PFAS in the Products. FAC ¶¶33,39,41,45(a)(b)(e).  These partial representations about characteristics of the Products are counter to the omitted information about the presence of PFAS and therefore trigger the duty to disclose and an actionable omission.  *Doe, supra*, at 1079-80

Finally, a duty to disclose and an actionable omission exist when the undisclosed information implicates safety concerns that a reasonable consumer would find material. *Hodson*, 891 F.3d at 861-62; *Mui Ho v. Toyota Motor Corp*., 931 F.Supp.2d 987; *Daugherty v. American Honda Motor Company, Inc*., 144 Cal.App.4[th] 824, 836 (2006).) *Lewis, supra* , *10 (plaintiffs "plausibly alleged an omission-based false advertising claim premised on defendant's failure to disclose the ***potential*** side effects associated with the product by virtue of it containing ICP")(emphasis added); *Dawood,* 2022 U.S. Dist. LEXIS 138774 *2, 5 ("FogAway contains unsafe per-and polyfluoroalkyl substances ("PFAS") which 'have been shown to have a number of toxicological effects'").

Here, Plaintiff clearly alleges serious health risks associated with the undisclosed presence of organic fluorine and PFAs in the Products.  FAC ¶¶18,19,21,23-25,27,30-32.  Burning candles containing organic fluorine and PFAs without any disclosure that the candles contain organic fluorine and PFAs implicates health and safety concerns that a reasonable consumer would find material. Therefore, Plaintiff's omission-based claims are actionable.

## II.    Plaintiff States Adequate Claims for Equitable Relief

### A. Plaintiff Establishes Standing to Seek Injunctive Relief

Defendants assert that Plaintiff's pleading has not established standing for purposes of injunctive relief.

A previously deceived consumer may have standing to seek an injunction against false advertising or labeling even though the consumer now knows or suspects that the advertising was false at the time of the original purchase.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).  As directed by *Davidson*, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id*.  In some cases, the threat of future harm is the inability to rely on the product's advertising or labeling in the future, and so the consumer will not purchase the product although she would like to. *Id.*, 889 F.3d at 969-970.  In other cases, the threat of future harm is that the consumer purchases the product in the future, despite its past false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *Id*.

In *Hamman*, a similar matter involving alleged PFAS in food packaging, the Court disagreed that previously deceived plaintiffs lacked standing to seek injunctive relief because "now wise to their alleged deception," plaintiffs' "continued desire to purchase the Products" was "palpably implausible." *Hamman*, 2023 U.S. Dist. LEXIS 85634, *13.  In so ruling, the Court considered plaintiffs' allegations that they would like to purchase defendant's Products in the future, but they are "unable to determine if

the Products are actually healthy, safe, and sustainable" because they cannot rely on the representations in defendant's current marketing scheme that omit any reference to PFAS and held those allegations were sufficient for Article III standing. *Id*. *14 [3];  *see also Ary,* 2023 U.S. Dist. LEXIS 49633, *9 ("when presented with false or misleading information when shopping, she will be unable to make informed decisions about whether to purchase Defendant's Lidocaine Patches").

That is exactly what Plaintiff alleges here: Plaintiff would like to purchase the Products in the future. FAC ⁋60. Plaintiff cannot determine the composition of the Products before purchasing them again and whether the Products are actually high-quality wellness oriented and premium sustainable products, or if they continue to contain organic fluorine and PFAS.  *Id.* Plaintiff cannot rely on Defendants' current advertising and marketing scheme that omit any reference to organic fluorine and PFAS. *Id.*   Thus, Plaintiff's allegations for injunctive relief are properly pled.

**B. Plaintiff May Plead Equitable Relief.**

Defendants next argue that Plaintiff may not plead claims for equitable relief, including future injunctive relief (MTD p.13:25-15:4).  Defendants are incorrect.

First, regarding prospective injunctive relief, even courts applying *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020), including the case relied upon by defendant, *Ary, supra,* have distinguished between equitable relief for past harm and injunctive relief for future harm and have held a plaintiff may seek injunctive relief under the UCL where damages would not protect against a ***future*** harm. *Ary*, 2023 U.S. Dist. LEXIS 49633, at *11-12; *Zeiger*, 526 F. Supp. 3d at 687 (even if Sonner applied to injunctive relief, monetary damages would be inadequate because damages compensate consumers for past purchases, whereas injunctive relief ensures the ability to rely on a defendant's future representations; California's consumer protection laws permit injunctions serving different purposes and remedying different harms than retrospective monetary damages); *Linton v. Axcess*

---

[3] The Court also noted that at the pleading stage, the truth of Plaintiffs' allegations is presumed and the allegations are construed in their favor. *Id*.

*Fin. Servs*., 2023 U.S. Dist. LEXIS 113669, *7 N.D. (June 30, 2023)(declined to extend *Sonner's* inadequate-remedy-at-law requirement because monetary damages would not guarantee that consumers can avoid unfair interest rates in the future); *Sparkman v. Comerica Bank*, 2023 U.S. Dist. LEXIS 136485, *33-34 (August 4, 2023).

Here, Plaintiff alleges continuing unlawful conduct and future harm - the continuing non-disclosure of the presence of organic fluorine in the Products and the continued false, misleading and deceptive marketing and advertising by Defendants. FAC ¶¶48,50,83,84,96,97,115,116. Plaintiff seeks a prospective injunction to prevent future misconduct and harm that is not quantifiable and is not an available remedy at law.

Second, Courts in the Ninth Circuit continue to hold that it is premature to determine whether plaintiffs are entitled to seek restitution at the pleading phase. See *Junhan Jeong v. Nexo Financial LLC, et. al*., No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 882 (N.D. Cal. October 17, 2022).

Third, Courts continue to find that plaintiffs could plead UCL restitution claims in the alternative, even when other adequate remedies may exist. *See Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2022 U.S. Dist. LEXIS 51006 (N.D. Cal. March 22, 2022); *Sparkman, supra*, at *33-34; *Junhan, supra*, at *92-93.

Lastly, damages would be inadequate due to the varying statutes of limitations at play. *See Sinatro*, 635 F. Supp. 3d at 882 ("statutes of limitation may preclude damages for certain periods of time, and equitable relief would be the only available remedy for certain timespans.").  Here, Plaintiff alleges claims pursuant to the UCL, FAL and CLRA and alleges a class period dating back four (4) years from the date of the filing of the complaint.  FAC ¶¶49,52,65. The limitations period for UCL claims is four (4) years, which is one year longer than the statutes of limitations for the FAL and CLRA. *Id*.  Therefore, putative class members who purchased products more than three years prior to the filing of the complaint are barred from a monetary recovery for

past harm if equitable relief under the UCL is unavailable because equitable relief is the only available remedy for that timespan. This clearly establishes that an adequate legal remedy does not exist.

## III.   Plaintiff States a Claim for Unjust Enrichment

Lastly, Defendants seek to dismiss Plaintiff's unjust enrichment claim. Defendants do not argue that Plaintiff may not plead an unjust enrichment claim as a matter of law. Instead, Defendants assert that: 1) Plaintiff has not (and cannot) allege an actionable misrepresentation or omission; and 2) Plaintiff fails to demonstrate that her available legal remedies are inadequate.

Plaintiff may state a quasi-contract cause of action where Plaintiff alleges that Defendants enticed her to purchase their products based on allegedly misleading information and that Defendant was "unjustly enriched" as a result. *See Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) ("This straightforward statement is sufficient to state a quasi-contract cause of action);  *Kanan, supra,* at*26-27 ("Because Plaintiffs plausibly allege that consumers could have been (and were) enticed to purchase Thinx's product based on allegedly misleading information, and because plaintiffs may plead claims in the alternative, they sufficiently state a quasi-contract claim.")

Here, as demonstrated above, Plaintiff has alleged that Defendants enticed her into purchasing certain products via false and misleading representations and omissions, which resulted in Defendants being unjustly enriched. Further, the FAC alleges that Defendants have unfairly obtained payments from its customers by misleading them and omitting material facts.  Therefore, Plaintiff sufficiently states a quasi-contract/unjust enrichment claim.

## IV.  CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motion, or alternatively, grant leave to amend.

DATED:  March 18, 2024                STEVENS, L.C.


By:  _____
      Paul D. Stevens
      Attorneys for Plaintiff and the
      Class



The undersigned, counsel of record for Plaintiff certifies that this brief contains 6,984 words, which complies with the word limit of L.R. 11-6.1.



DATED:  March 18, 2024                STEVENS, L.C.


By:  _____
      Paul D. Stevens
      Attorneys for Plaintiff and the
      Class

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS